Joseph LICATA, III, Appellant,

v.

Linda Vergara LICATA, Appellee.

No. 14–96–01046–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 7, 1999.

Rehearing Overruled Feb. 17, 2000.

Patricia A. Wicoff, Houston, for appellants.

Joel A. Nass, Shawn Russel Casey, Houston, for appellees.

Panel consists of Justices ANDERSON, EDELMAN, and O'NEILL.

## OPINION

JOHN S. ANDERSON, Justice.

This is an appeal from a divorce proceeding. Joseph Licata, III (Joseph) appeals from the final decree of divorce. The sole issue on appeal concerns the disposition of property between the parties. Joseph brings two points of error. First, he argues the evidence is insufficient to support the trial court's implied findings that proceeds from a personal injury settlement were the separate property of Linda Licata (Linda). Second, Joseph asserts the trial court abused its discretion in awarding Linda a percentage of his future income. We affirm the judgment of the trial court.

### Background

The most valuable contested asset in the divorce proceedings below was the proceeds from a personal injury suit settled during the marriage. After a bench trial, the trial court awarded Linda $389,222 [1] in settlement proceeds as her separate property. During the trial the court admitted into evidence two agreements resolving her personal injury suit. One document, signed by Linda alone, contains the following statement: "It is further understood

---

1. In the Final Decree of Divorce Nunc Pro Tunc signed April 30, 1996, the trial court awarded all sums in Merrill Lynch account # 568–15W80 to Linda as her separate property. Earlier, on January 10, 1996, the trial court prepared a property division wherein the Merrill Lynch account, in the amount of $389,222, was awarded to Linda as her separate property.

that the nature of the injuries in this case are not easily ascertained, and that payment herein is made for physical pain and mental anguish and physical disfigurement alone." That agreement gave Linda $237,500 in exchange for the release of all claims against the settling parties. The second agreement is signed by both Linda and Joseph, and sets out a settlement amount of $425,000 to be paid by another defendant. This second agreement provides, "[t]he sum announced herein is being paid exclusively on the basis of pain, suffering, mental anguish and other intangible damages." This document does not specify whether the settlement is based on Linda's, Joseph's, or both parties' injuries, and contains an indemnity provision holding the defendant harmless from any claims "for medical expenses incurred which may hereafter be asserted against [the settling defendant] by any person or entity as a result of the above-described occurrence or injuries of **LINDA LICATA and/or JOE LICATA.**" The appellate record also contains an unsigned document indicating Linda's receipt of the net settlement proceeds.[2]

The trial court signed the Final Decree of divorce on April 30, 1996. That judgment awarded Linda as her separate property the sum in a Merrill Lynch account which represented the then remaining settlement funds. The judgment also awarded Linda 50% of any referral fee received by Joseph on any pending case he had referred to another attorney prior to December 5, 1995, and 30% of any fees he recovered on any of his own cases that were pending prior to December 5, 1995.

## I.

### Factual Sufficiency of the Evidence

In point of error one, Joseph contends the evidence is insufficient to support the trial court's implied finding that the proceeds from the personal injury settlements

were the separate property of Linda. At the conclusion of his argument under this point of error, Joseph requests that the judgment be reversed and remanded for a new trial. Accordingly, we review his sufficiency challenge under the factual sufficiency standard of review.

### A.
### Standard of Review

■ This was a nonjury trial. Joseph requested findings of fact and conclusions of law pursuant to Civil Procedure Rule 296, but failed to file a notice of past due findings of fact pursuant to Civil Procedure Rule 297 when the trial court did not make the requested findings. Where a party fails to file the notice pursuant to Rule 297, the findings and conclusions are not properly requested. *See Smith v. Harrison County,* 824 S.W.2d 788, 792 (Tex.App.—Texarkana 1992, no pet.). In a nonjury trial where no findings of fact or conclusions of law are filed or properly requested, it is implied that the trial court made all the necessary findings to support its judgment. *See Roberson v. Robinson,* 768 S.W.2d 280, 281, (Tex.1989). Where, as here, a reporter's record is brought forward on appeal, these implied findings may be challenged by factual sufficiency and legal sufficiency points the same as jury findings or a trial court's findings of fact. *See id.*

■ The exact standard of review which we must apply to Joseph's point of error one is controlled, in part, by the question of which party had the burden of proof. There is a statutory presumption that all property possessed by Joseph and Linda at the time of the dissolution of their marriage is community property. *See* TEX. FAM.CODE ANN. § 5.02 (Vernon 1993). Clear and convincing evidence is required to overcome that presumption and establish property as separate property. *See id.* The burden of overcoming the pre-

---

**2.** This document is a work sheet created by her attorney indicating the total settlement amount available to Linda, minus certain fees and expenses.

sumption of community property is on the party asserting otherwise by clear and convincing evidence. *See Wilson v. Wilson,* 145 Tex. 607, 201 S.W.2d 226, 227 (1947).

Thus, Joseph's point of error attacks the factual sufficiency of an implied adverse finding on an issue upon which Linda had the initial burden of proof. A factual insufficiency point of error is appropriate if the party without the burden of proof challenges a finding of fact. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). A factual insufficiency point of error requires the reviewing court to examine all evidence which supports and contradicts the finding under attack. *See Hickey v. Couchman,* 797 S.W.2d 103, 109 (Tex.App.—Corpus Christi 1990, pet. denied). The test is whether the evidence supporting the finding is so slight, or the evidence against it so strong, that the finding is manifestly unjust and quite clearly wrong. *See id.; see also Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (stating that appellate court, when reviewing factual sufficiency of the evidence, must consider and weigh all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust).

The trial court's award of all of the settlement proceeds to Linda as her separate property presumptively is based on an implied finding by the court that it was her separate property. The validity of this implied finding is the essence of Joseph's first point of error.

## B.

### Character of the Settlement Funds

■ Recovery for personal injuries to the body of a spouse is the separate property of that spouse. *See* Tex. Fam. Code Ann. § 5.01(a)(3) (Vernon 1993); *Perez v. Perez,* 587 S.W.2d 671, 673 (Tex.

1979); *Graham v. Franco,* 488 S.W.2d 390, 396 (Tex.1972). The damages that are the separate property of the injured spouse include those awarded for disfigurement and for physical pain and suffering in the past and in the future. *See Graham,* 488 S.W.2d at 396; *Moreno v. Alejandro,* 775 S.W.2d 735, 737 (Tex. App.—San Antonio 1989, no pet.). Damages for mental pain and anguish are separate property. *See Moreno,* 775 S.W.2d at 737. The community estate, however, is entitled to any recovery for loss of earning capacity during marriage, for medical expenses incurred during marriage, and for other expenses associated with injury to the community estate. *See* Tex. Fam.Code Ann. § 5.01(a)(3); *Perez,* 587 S.W.2d at 673; *Moreno,* 775 S.W.2d at 738.

■ When a spouse receives a settlement from a lawsuit during marriage, some of which could be separate property and some of which could be community property, it is that spouse's burden to demonstrate which portion of the settlement is her separate property. *See Kyles v. Kyles,* 832 S.W.2d at 194, 198 (Tex. App.—Beaumont 1992, no pet.). Without clear and convincing evidence showing the recovery is solely for the personal injury of a particular spouse, the spouse does not overcome the presumption that all property received during marriage is community property. *See* Tex. Fam.Code Ann. § 5.02.

Joseph contends on appeal that the two settlement agreements resolving Linda's personal injury litigation reveal that all of the recovery was community property. At trial, Linda relied upon the settlement and release documents to show the recovery was for her personal injury. Joseph attempted to introduce extrinsic evidence to prove he or the community estate was entitled to a portion of the settlement. Joseph, however, was precluded from entering any extrinsic evidence.[3] The only

---

**3.** Joseph has not brought a point of error on appeal attacking any of the evidentiary rulings. Instead, he argues Linda failed to meet her burden of overcoming the community property presumption.

other evidence concerning the settlement agreement is limited to testimony by Linda and the attorney representing her during the personal injury settlement negotiations. Linda testified that the entire recovery was for pain and suffering. A CPA testified that Linda reported the income on her tax return consistent with the notion that the entire amount was her separate property.

■ The "Release" and the "Compromise Settlement Agreement" both contain language bearing on the question of the separate property nature of the payments provided for in those agreements. The Compromise Settlement Agreement states: "It is further understood that the nature of the injuries in this case are not easily ascertained, and that *payment herein is made for physical pain and mental anguish and physical disfigurement alone.*" (emphasis added). The Release provides: "The sum announced herein is being *paid exclusively on the basis of pain, suffering, mental anguish and other intangible damages.*" (emphasis added). The clear statements in the settlement documents displaced the presumption of community property and created a new presumption that the settlement proceeds are Linda's separate property. *See Kyles,* 832 S.W.2d at 196 (citing *Henry S. Miller Co. v. Evans,* 452 S.W.2d 426, 430 (Tex.1970)). These recitals become prima facie evidence the recovery is separate property. *See id.* When this triggering event occurs, the spouse claiming that the property is community must then come forward with evidence to sufficiently rebut this separate property presumption and a failure to do so conclusively establishes that such property is separate property. *See id.* Joseph has not directed this court to any evidence he produced at trial rebutting the new presumption that the settlement funds were Linda's separate property, and we have found none. However, as part of his sufficiency challenge, Joseph raises various issues which he asserts defeat the separate property character of the settlements.

### 1. Joseph's Signature on the Release

■ Joseph contends his signature on the Release and the language within it barring further action by him against the named defendants, which he asserts is a relinquishment of a valuable right, effect the following: made him a party to the contract, proves the funds were paid to both spouses, and defeats the separate property presumption of the recital in the Release. We disagree. The funds paid under the Release were paid in trial court cause number 85–58163 in the 151st District Court of Harris County. We do not have in the record before us a copy of the petition in that proceeding to determine whether or not Joseph was a named plaintiff, or whether any recovery was sought for community property expenses. Merely pointing to his name on the Release and his relinquishment of future causes of action does not, in our opinion, constitute a showing sufficient to rebut the prima facie evidence in the recitals that the payment under the Release was solely for Linda's pain and suffering, which is her separate property. Joseph has not adverted to any other evidence in the record suggesting that any portion of the recovery was community property.

This court in a recent decision has reached a similar conclusion. *See Slaton v. Slaton,* 987 S.W.2d 180 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). In *Slaton* the wife sued a doctor and a hospital for negligence, alleging damages for pain and suffering, lost earning capacity and medical expenses. *See id.* 181. The husband alleged damages for mental anguish, depression and loss of consortium. *See id.* The case was settled for $450,000 and both spouses signed the release and received a lump sum settlement. *See id.* at 182. Later, they filed for divorce. *See id.* Because the settlement agreement did not allocate amounts for physical injury, mental anguish, loss of earnings or medical expenses, thus potentially combining separate and community recovery, it was the

burden of the spouse claiming the funds as separate property to so demonstrate. *See id.* at 183. Following the trial, the court made certain findings: first, the court found the $450,000 settlement contained both community and separate property; second, the parties stipulated to the total amount of medical expenses and lost wages, a community estate asset; and third, the entire balance of the settlement was the separate property of the wife based on her clear and convincing evidence of pain and suffering, and the husband's failure to establish by clear and convincing evidence that he suffered any damages. *See id.* at 182.

The husband appealed the judgment, asserting in one of his points of error that the trial court abused its discretion in characterizing proceeds from the settlement as the wife's separate property because she failed to overcome the presumption that the funds were community property. *See id.* This court overruled the husband's point of error, holding that because the husband (a) failed to present evidence he suffered a physical injury or had any monetary loss other than his wife's agreed medical expenses and lost wages, and (b) provided only self-serving statements regarding his mental anguish, depression and loss of consortium, his evidence was insufficient to rebut his wife's clear and convincing evidence that the remainder of the settlement proceeds, other than the wages and medical expenses, were her separate property. *See id.* at 183. Stated differently, this court held that the wife had, at the divorce trial, brought forward clear and convincing evidence that the remainder of the settlement, after reimbursement to the community estate, was her separate property. *See id.* at 184.

The analysis there can be applied to the case *sub judice.* Joseph's point of error one attacks the factual sufficiency of the evidence to support the trial court's implied finding that all of the settlement proceeds were Linda's separate property.

Both settlement documents awarded the proceeds based on damages constituting Linda's separate estate. Linda and her trial attorney testified the settlement amounts were awarded just for those injuries and no others. Linda established with clear and convincing evidence the separate property nature of the settlement proceeds, and Joseph, like the husband in *Slaton,* failed to introduce evidence that any portion of the award was for damages to the community estate.

As part of his argument that a portion of the proceeds is community property, and that Linda's own evidence established that fact, Joseph relies on *Moreno,* 775 S.W.2d at 737–738. His reliance is misplaced. There in the trial court, the former wife sued for partition of the proceeds from the settlement of a personal injury lawsuit by the husband and other plaintiffs.. *See id.* at 736. The husband obtained a summary judgment on the ground, among others, that the damages were his separate property. *See id.* at 737. The husband and plaintiffs' petition in the lawsuit referred to the plaintiffs' medical expenses that had been incurred. *Id.* Recovery for medical expenses incurred during marriage is community property. *Id.* The judgment in the lawsuit stated it foreclosed all claims for damages which were asserted. *Id.* at 738. The *Moreno* court held that the husband's own summary judgment disclosed that some portion of the damages recovered were for medical expenses, a community estate asset. *Id.* The court concluded that the evidence submitted by the husband raised a fact issue concerning what portion of the proceeds awarded to him constituted his separate property, an issue at trial upon which he would have the burden of proof. *Id.* Here, unlike the husband in *Moreno,* Linda did not introduce any documents at trial reflecting that any portion of her recovery consisted of community property damages.

We hold, therefore, the inclusion of Joseph's name in the Release, standing alone, does not trump the recital in that

agreement regarding the bases for the funds in a factual sufficiency challenge, and thus the trial court did not err in awarding the funds under the Release to Linda as her separate property.

### 2. Indemnity Provisions In The Settlement Agreements

 Because both of the settlement documents contain indemnity provisions, Joseph argues that they create a community debt, and the proceeds transferred under the settlement agreements, which were obtained by agreeing to subject the community to such indebtedness, must therefore be deemed community property. We disagree. An indemnity agreement arises from a promise by the indemnitor to safeguard or hold the indemnitee harmless against either existing or future loss or liability, or both. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993). The agreement creates a potential cause of action in the indemnitee against the indemnitor. *See id.* Property acquires its character as separate or community at the time of its acquisition. *See Henry S. Miller Co.*, 452 S.W.2d at 430. Under an indemnity agreement, the right to indemnity does not arise until the judgment is either rendered or paid. *See Bayoud v. Bayoud*, 797 S.W.2d 304, 317 (Tex. App.—Dallas 1990, writ denied). Therefore, at the time the settlement agreements containing the indemnity agreements were executed, the right to any claim by the indemnities against Linda and/or Joseph as indemnitors had not yet matured. We must conclude that, contrary to Joseph's argument on appeal, because no debt existed pursuant to the indemnity agreements at the moment the settlement funds were received, the settlement funds were Linda's separate property.

### 3. Workers' Compensation

 Joseph also contends that a portion of the settlement proceeds is workers' compensation paid to Linda because it is listed on his trial exhibit six. His argument is based, in part, on Section 5.01(a)(3) of the Family Code which provides that a spouse's separate property excludes any recovery for loss of earning capacity during marriage. *See* TEX. FAM.CODE ANN. § 5.01(a)(3). In *Lewis v. Lewis*, the court noted, in support of its conclusion there, that a spouse has a community interest in the other spouse's compensation benefits when the injury and disability occurred during marriage. *See* 944 S.W.2d 630, 631 (Tex.1997). Here, Joseph's trial exhibit six is an unsigned work sheet which reflects the total amount of the settlement proceeds obtained by Linda, the deductions from that amount for various fees and expenses, and the net amount due Linda. Near the top of the statement is a deduction for a workers' compensation lien, and a reference to Wausau Insurance. There is a signature line for Linda, but exhibit six is not signed.

 During the trial, Linda was called by Joseph as an adverse witness, and was asked whether she was paid for future wages as part of the settlement of her claims. Her response was "no." It cannot be disputed that any compensation benefits recovered for her injury and disability occurring during marriage would be community property. *See id.* However, Linda's testimony unequivocally established that none of the settlement proceeds were paid for future earnings. More importantly, neither one of the settlement agreements is alleged to be ambiguous, thus precluding the use of this exhibit six as parol evidence. Whether a contract is ambiguous is a question of law for the court to decide looking at the contract as a whole in light of the circumstances present when the contract was entered. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983). Joseph argues in his brief to this court that the entry on exhibit six referring to a workers' compensation lien reveals that "part of the personal injury settlement *must have been* based on [Linda's] loss of earning capacity during marriage."(empha-

sis added). Joseph's interpretation is parol evidence, and parol evidence of intent cannot be admitted for the purpose of creating an ambiguity. *See Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 283 (Tex.1996). Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract. *See id.* Courts should not strain to find an ambiguity if, in doing so, they defeat the probable intentions of the parties. *See Quality Oilfield Prod., Inc. v. Michigan Mut. Ins. Co.*, 971 S.W.2d 635, 637 (Tex.App.—Houston [14th Dist.] 1998, no pet.). Because the settlement agreements are not ambiguous regarding the precise bases for payment of the settlement proceeds, the language in exhibit six may not be used to create an ambiguity.

We have examined all the evidence which supports and contradicts the trial court's implied finding that the settlement proceeds are Linda's separate property. We hold the finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule Joseph's point of error one.

## II.

### Future Income

In Joseph's second point of error, he argues the trial court abused its discretion in awarding Linda a percentage of his future income. Specifically, he argues the language of the property award is too broad and impermissibly awards Linda a percentage of his future income which she is not legally entitled to receive. The final divorce decree contains the following language in the section awarding property to Linda:

8. Respondent [Linda] is awarded thirty (30%) of any and all amounts, payments, disbursements, fees, or their value, if, as and when received, resulting from any law matter handled by JOSEPH LICATA, III from the date of the parties' marriage wherein Petitioner represented a client or has a financial interest and which cases Petitioner has not referred to another attorney or law firm, and which cases were not settled and fees paid as of December 5, 1995. Petitioner shall pay such amounts directly to the Respondent, if, as and when received, but not later than 5:00 p.m. on the day following the receipt of said funds by the Petitioner.

The next paragraph in the decree provides as follows:

9. Respondent [Linda] is awarded fifty (50%) percent of any and all amounts, payments, disbursements, fees, or their value, if, as and when received, resulting from any law matter referred to or handled by any other attorney or firm and from which JOSEPH LICATA, III has referred the case to them or from which he otherwise has a financial interest from the date of the parties' marriage, and which case were not settled and fees paid as of December 5, 1995. Petitioner shall pay such amounts directly to the Respondent, if, as and when they are received, but no later than 5:00 p.m. on the day following the receipt of said funds.

In a divorce proceeding, the trial court shall order a division of the estate of the parties in a manner it deems just and right. *See* TEX. FAM.CODE ANN. § 3.63(a) (Vernon 1993). The Texas Family Code affords the trial court wide latitude and discretion in dividing the community estate of the parties in a divorce suit. *See Smith v. Smith*, 836 S.W.2d 688, 692 (Tex.App.—Houston [1st Dist.] 1992, no pet.). A reviewing court will not disturb the trial court's exercise of that discretion without a clear showing of abuse of discretion. *See id.* However, the trial court does not have unlimited discretion. *See id.* In making its division, the trial court may

not divest one party of his separate property. *See Cameron v. Cameron,* 641 S.W.2d 210, 215 (Tex.1982).

## A.

### Award of Fees For Non–Referred Cases

■ Joseph complains that by awarding Linda 30% of any fees that he recovered on any of his cases that were pending prior to December 5, 1995, and by awarding Linda 50% of any referral fee received by him on any pending case he referred to another attorney prior to December 5, 1995, the trial court improperly awarded Linda a percentage of his future income. Joseph argues this improperly divests him of his separate property. Specifically, Joseph asserts there may be cases which he "handled" prior to December 5, 1995, but for which a vested right to receive fees did not arise until after December 5, 1995. In his brief, Joseph hypothesizes he could have retained a client for a matter prior to the divorce and entered a contract, where an initial amount is charged for all pretrial work with the agreement that should the case require a trial or an appeal, additional fees would then be owed to compensate him for those services. Because the second contract portion of the agreement may encompass work to be performed after December 5, 1995, Joseph argues that according to the divorce decree, he could be required to pay Linda 30% of all compensation he receives from the client, regardless of whether the compensation for services was performed before or after December 5, 1995, because he initially "handled" the case before the divorce.[4]

■ We recognize a spouse is not entitled to a percentage of his or her spouse's future income. *See Smith,* 836 S.W.2d at 692. A spouse is only entitled to a division of property that the community owns at the time of the divorce. *See id.*

However, a party complaining of a property division "must be able to show from the evidence in the record that the division is so unjust and unfair as to constitute an abuse of discretion." *Tschirhart v. Tschirhart,* 876 S.W.2d 507, 509 (Tex.App.-Austin 1994, no pet.); *see also Magill v. Magill,* 816 S.W.2d 530, 534 (Tex.App.—Houston [1st Dist.] 1991, pet. denied) ("Without recorded property values and factual findings, we presume that the trial court properly considered the entire circumstances of the parties and correctly exercised its discretion in dividing their property.").

We agree that in theory the language of paragraph 8 could encompass pre-divorce as well as post divorce income. However, we will not disturb the trial court's division based on speculation. Because nothing in the record or Joseph's brief demonstrates he has actual cases pending on December 5, 1995 on which he will perform compensable legal services post divorce, we hold the trial court did not abuse its discretion in awarding Linda a percentage of the income generated from Joseph's pending non-referred cases. *See* Tex.R.App. P. 38.1(h) (brief must contain citations to authority and to record to support contentions on appeal).

## B.

### Award of Fees For Referred Cases

■ Next, Joseph argues the provision in paragraph 9 concerning referral fees is also improper because it awards a percentage of his post divorce income to Linda. He complains the provision does not distinguish between referred cases where Joseph will continue to work, and those referred cases where he was a forwarding attorney only who simply referred the case without any requirement that he work on the case or assume any responsibility for

4. In his brief Joseph suggests that the problem with paragraph 8 may lie in the drafting. If the trial court intended to award Linda a percentage of his receivables, Joseph acknowledges Linda's entitlement to such receivables, but contends paragraph 8 does not accomplish that goal. Apparently, Linda concurs that paragraph 8 is intended to cover only Joseph's accounts receivable as of December 5, 1995.

it. He asserts that in those instances where he had continuing responsibility to provide legal services, then the trial court awarded Linda a portion of his post divorce compensation.

 Joseph concedes in his brief that in the latter situation described above, where he was a forwarding attorney only, Linda is entitled to a percentage of his income earned on those referrals. However, he continues to challenge the former category which will require his additional time and toil based on the contention it will be his separate property. We disagree. His argument is raised under this point of error asserting abuse of discretion. As noted above, in a nonjury trial where there are no findings of fact and conclusions of law in the record, it is implied that the trial court made all the necessary findings to support its judgment. *See Roberson,* 768 S.W.2d at 281. Thus, here the trial court made an implied finding that Joseph's right to receive amounts under the referral agreements had fully vested based on the evidence introduced at trial. Joseph has not referred us to any record evidence which contradicts or rebuts that implied finding. Without any clear and convincing evidence to overcome the trial court's implied finding regarding the vesting of the right to the income under the referral contracts, we do not find the trial court abused its discretion in awarding Linda a percentage of Joseph's income from referred cases. It is undisputed that the benefits from a vested property right are community property even though they may be paid after divorce. *See Simmons v. Simmons,* 568 S.W.2d 169, 170 (Tex.Civ.App.—Dallas 1978, pet. dism'd). A reviewing court will not disturb a trial court's exercise of its discretion in dividing the community estate of the parties in a divorce suit without a clear showing of abuse of discretion. *See Smith,* 836 S.W.2d at 692. Because Joseph has not made a clear showing on appeal that the trial court abused its dis-

cretion, we overrule his second point of error.

We affirm the judgment of the trial court.

O'NEILL, J., not participating.