# NO. 12-09-00274-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAMES TRUMAN HENSLEE,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *MARY GLENDA HENSLEE,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

This is an appeal from a decree of divorce. In two issues, James Truman Henslee complains the trial court erred in characterizing his separate property as community property so that its property division divested him of his separate estate. We affirm.

## BACKGROUND

Mary and James Henslee married on August 29, 1996. On September 24, 1996, James was injured while performing his duties as a trainman for the Burlington Northern and Santa Fe Railway Company. James filed suit against the railway company seeking damages for lost wages, diminished earning capacity, past and future physical pain, physical impairment, and mental anguish, and past and future medical services and care. James settled with the railroad for $465,000.00 and executed a release of all claims.

James placed the settlement proceeds in two joint tenancy accounts at A.G. Edwards. Prior to the marriage, James had purchased three disability policies renewable monthly. James also deposited the proceeds from the disability policies in the A.G. Edwards joint accounts. It was James's decision to place the proceeds in a joint account in the names of James and Mary Henslee. Mary occasionally wrote checks on the accounts to buy items for the house. James did not withdraw any of the money except to pay court approved attorney's fees.

Mary filed her petition for divorce on January 17, 2003.  On September 23, 2004, the trial court signed a Final Decree of Divorce Nunc Pro Tunc.  The court granted James's motion for new trial on November 18, 2004 "on the sole **issue** of the characterization of the FELA settlement and, if a different characterization is found, its effect on the property division."

The court heard the case again on June 4, 2007.  On August 26, 2009, the court signed a final decree of divorce.  The court awarded James "[o]ne-half of the community portion of the A.G. Edwards' accounts . . . which includes proceeds from James Truman Henslee's lawsuit and Trustmark policy proceeds . . . ."  The court awarded the other one-half to Mary ($91,992.06).  The court also awarded Mary the house, but awarded James reimbursement of $62,082.00. The court found that $20,015.61 in the A.G. Edwards accounts was James's separate property and $5,265.00 was Mary's separate property.

## CHARACTERIZATION OF PROPERTY

In his first issue, James challenges the trial court's characterization of the proceeds of the FELA settlement as community property.  In his second issue, he challenges the trial court's characterization of the disability insurance payments from Trustmark Insurance Company as community property.  The trial court's rulings, he argues, divest him of his separate property, an error that requires reversal.

## Standard of Review

The standard of review for property division in family law cases is abuse of discretion. *Wilson v. Wilson*, 132 S.W.3d 533, 536 (Tex. App.–Houston [1st Dist.] 2004, pet. denied).   In determining whether the trial court abused its discretion, the reviewing court must decide whether the trial court acted without reference to any guiding rules or principles, so that its ruling was so arbitrary or unreasonable as to be clearly wrong.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex. App.–Fort Worth 2003, no pet.) (op. on reh'g).  When the standard of review is abuse of discretion, legal and factual insufficiency are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion.  *See Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Crawford v. Hope*, 898 S.W.2d 937, 940 (Tex. App.–Amarillo 1995, writ denied).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in similar circumstances does not

2

demonstrate an abuse of discretion. ***Downer***, 701 S.W.2d at 242. To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, the appellate court conducts a two part inquiry: (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in the application of that discretion? ***In re T.D.C.***, 91 S.W.3d 865, 872 (Tex. App.–Fort Worth 2002, pet. denied) (op. on reh'g).

When the burden of proof at trial is by clear and convincing evidence, we apply a higher standard of legal and factual review. ***In re J.F.C.***, 96 S.W.3d 256, 265-66 (Tex. 2002). Clear and convincing evidence is defined as that "measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon Supp. 2009); ***Transp. Ins. Co. v. Moriel***, 879 S.W.2d 10, 31 (Tex. 1994). It is an intermediate standard between the preponderance standard of civil proceedings and the beyond a reasonable doubt standard in criminal trials. ***In re G.M.***, 596 S.W.2d 846, 847 (Tex. 1980).

## Applicable Law

Property possessed by either spouse during or on dissolution of the marriage is presumed to be community property, absent clear and convincing evidence to the contrary. TEX. FAM. CODE ANN. § 3.003 (Vernon Supp. 2009). The Texas Family Code defines separate property as that property owned by a spouse before marriage, acquired during the marriage by gift, devise or descent. ***Id***. § 3.001(1), (2) (Vernon Supp. 2009). The Family Code also defines as separate property "the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage." ***Id***. § 3.001(3) (Vernon 2006); *see, e.g., **Perez v. Perez***, 587 S.W.2d 671, 673 (Tex. 1979). Portions of a personal injury award belonging to the community estate include damage for lost wages, medical expenses, and other expenses associated with injury to the community estate. *See, e.g., **Graham v. Franco***, 488 S.W.2d 390, 396 (Tex. 1972); ***Cottone v. Cottone***, 122 S.W.3d 211, 213 (Tex. App.–Houston [1st Dist.] 2003, no pet.). "When a spouse receives a settlement from a lawsuit during marriage, some of which could be separate property and some of which could be community property, it is that spouse's burden to demonstrate which portion of the settlement is [his] separate property." ***Licata v. Licata***, 11 S.W.3d 269, 273 (Tex. App.–Houston [14th Dist.] 1999, pet. denied).

3

The determination of whether property is separate because owned or acquired before marriage is governed by the inception of title doctrine. *Smith v. Smith*, 22 S.W.3d 140, 145 (Tex. App.–Houston [14th Dist.] 2000, no pet.) (op. on reh'g). Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested. *Id.* In order to overcome the community presumption, the burden is on the spouse claiming certain property as separate to trace and clearly identify the property claimed to be separate. *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex. 1987). Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community ownership by tracing the assets on hand during the marriage back to property that, because of the time and manner of its acquisition, is separate in character. *Cockerham v. Cockerham*, 527 S.W.2d 162, 168 (Tex. 1975). However, if separate and community property have been commingled so as to defy resegregation and identification, the community presumption prevails. *Hanau*, 730 S.W.2d at 667.

A trial court may not divest a spouse of his separate property. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex. 1977). It is unnecessary to show harm, because divestiture of separate property requires reversal. *See, e.g., Shestawy v. Shestawy*, 150 S.W.3d 772, 780 (Tex. App.–San Antonio 2004, pet. denied).

Any doubt as to the character of property should be resolved in favor of the community estate. *Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. Ap.–Fort Worth 1983, writ ref'd n.r.e.).

**The FELA Settlement**

In his suit, James sought to recover damages for past and future lost wages, diminished earning capacity, past and future physical pain, physical impairment, and mental anguish, and past and future medical services and care. James settled all claims for $465,000.00. Damages for lost wages and diminished earning capacity are community property. Recovery for medical expenses incurred during marriage is community property. *Id.*; *Graham*, 488 S.W.2d at 396. Damages for personal injury are separate property. *Perez*, 587 S.W.2d at 673.

James contends the entire settlement was intended to compensate him for his personal injury; hence it is all his separate property. James signed several documents in connection with the settlement. James argues that a sentence in one of the documents supports his contention that the entire settlement was compensation for personal injury, and none of the money was for lost earnings or earning capacity. James relies on the following language in one of the settlement

4

documents: "For Railroad Retirement Act purposes, I agree the entire amount of this payment is apportioned to factors other than time lost; nevertheless, I understand this is a final payment and complete release and includes any claim I may have for time lost." At the same time he signed the release, James signed an "Apportionment of Claim Settlement," which recited that it was "[f]or the purpose of the Railroad Retirement Act, Railroad Unemployment Insurance Act and Railroad Retirement Tax Act. . . ." It also showed that the amount of the settlement was apportioned to "other than taxable time lost." The document stated, "This apportionment and allocation is made solely for the purpose of determining creditable earnings and computing taxes under said Acts to provide for the reimbursement of the Railroad Retirement Board for the amount paid employee for sickness benefits."

James signed a third document entitled "Agreement Not to Mark Up/Resignation" wherein he stated that he had agreed to

> accept the settlement of his claims for personal injuries, disabilities and illnesses arising out of such events and circumstances more fully described in said Settlement and Release Agreement, and for any and all employment claims for personal injuries, disabilities and illnesses arising out of such events and circumstances more fully described in said Settlement and Release Agreement, and for any and all employment claims arising from my employment from the BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY.

This document also stated, "I hereby assert and agree that said sums so paid me are based upon representations of such permanent disability that will forever prohibit and incapacitate me from returning to any railroad employment. . . ." James promised not to seek future employment with the railroads. He also confirmed that the agreement "includes a settlement and compromise of any and all claims that could have been or could be brought under the Railroad Labor Act. . . ."

We are not persuaded that the apportionment of the settlement to factors other than time lost establishes that it was intended solely as compensation for personal injury and therefore separate property. Read in their entirety, the documents show that "time lost" refers to the special meaning the term has in the calculation of the employee's retirement annuity and disability eligibility under the Railroad Retirement Act. The sentence James relies on clearly states that the apportionment is for "Railroad Retirement purposes" and concludes, "Nevertheless, I understand that this a final payment and complete release and *includes any claim I may have for lost time.*" (Emphasis added). We conclude that, as the trial court found,

5

the allocation of the settlement "to other than 'time lost' was meant only to avoid the consequences of an award for 'time lost' under the Railroad Retirement Act."

In accepting the settlement, James released a broad range of claims including community claims for lost employment, earning capacity, and medical expenses. In a separate document, he gave up any claim for future earning capacity "based upon representations of such permanent disability that will forever prohibit and incapacitate me from returning to any railroad employment. . . ." The trial court also found that the amount of the lump sum payment was approximately the amount he would have earned as a railroad employee had he continued with that employment from the date of the accident to the date he would be eligible to retire with benefits.

We believe that part of the settlement James received was in consideration of his release of community claims such as lost wages, diminished earning capacity, and medical expenses. Since the settlement included compensation for both community and separate claims, it was James's burden to establish, by clear and convincing evidence, what portion of the proceeds were separate property. *See Cottone*, 122 S.W.3d at 213. James failed to sustain his burden of demonstrating what part of the proceeds was community and what was separate. Instead, he insisted that the entire sum was separate property. Without clear and convincing evidence establishing what part of the settlement was separate property, the trial court correctly concluded that all of the settlement must be presumed to be community property. *Licata*, 11 S.W.3d at 273. Appellant's first issue is overruled.

**Disability Policy Proceeds**

James argues that he first purchased the disability policies prior to the marriage. He claims that under the inception of title doctrine, the character of the policies as separate property was fixed at the time he first executed the insurance agreements. Therefore, he contends that the total of $60,000 in monthly disability payments that he received during the marriage during the period he was unable to work is his separate property.

In its findings of fact made after the 2004 trial, the trial court found that "the Trustmark policy vested after the marriage of the parties." It further concluded that "the payments under the policy are community property."

The court granted a new trial solely on the issue of the characterization of the FELA settlement. At the hearing conducted on June 4, 2007, the parties agreed that court could take

6

judicial notice of the testimony and exhibits in the first trial. However, no record of those proceedings has been brought forward on appeal. The limited testimony adduced at the second (2007) hearing concerns evidence related only to the characterization of the FELA settlement. The monthly disability payments from Trustmark are not mentioned. After the 2007 hearing, the court made no findings of fact related to the Trustmark proceeds.

James's pleadings show that he purchased three disability policies prior to his marriage to Mary. But the policies state that they require renewal each month and that the period of insurance is one month. The maximum benefit under the policies was twenty-four months. All of the disability payments were paid during the marriage and were intended to replace earnings lost while James and Mary were married.

"If a person becomes disabled or injured, any disability payment or workers' compensation payment is community property to the extent it is intended to replace earnings lost while the disabled or injured person is married." TEX. FAM. CODE ANN. § 3.008(b) (Vernon 2006). The twenty-four monthly benefit payments of $2,500.00 totaling $60,000.00 are community property. Appellant's second issue is overruled.

<u>DISPOSITION</u>

The judgment is ***affirmed***.

<u>**BILL BASS**</u>
Justice

Opinion delivered July 30, 2010.
*Panel consisted of Griffith, J., Hoyle, J., and Bass, Retired Justice, Twelfth Court of Appeals sitting by assignment.*

(PUBLISH)

7