# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00007-CV

**Donald Harrell and Shirley Temesgen, Appellants**

**v.**

**Kris Hochderffer, as Trustee of the Clark Family Trust, Appellee**

### FROM PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. 85,570-C, HONORABLE GUY S. HERMAN, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I respectfully dissent from the majority opinion. Because I would hold that appellants established their entitlement to summary judgment as a matter of law based on the appellee's failure to raise an issue of material fact rebutting the applicable community-property presumptions, I would reverse the portions of the trial court's summary-judgment order partially granting Hochderffer's summary-judgment motion and denying the appellants' summary-judgment motion, and I would render summary judgment in favor of the appellants.

Within the appellants' argument regarding the character of the settlement funds deposited into the Clark Family Trust ("the Trust"), the appellants rely on two presumptions: (1) the presumption that property possessed during marriage is community property; and (2) the presumption that a personal-injury settlement that could include both separate and community property is community property.

Regarding the first presumption, there is no dispute that Rudie and Jessie Mae received and possessed the settlement proceeds during their marriage. Thus, the first presumption applies. *See* Tex. Fam. Code Ann. § 3.003(a) (West 2006). Regarding the second presumption, the Settlement Agreement indicates that Rudie and Jessie Mae each received a separate amount of money to dismiss the personal-injury suit but does not indicate the type of damages for which the settlement proceeds were paid. The record shows that Rudie and Jessie Mae sought at least some damages that would be considered their community property—for Rudie's past and future medical expenses—and at least some that would be considered Rudie's separate property—for Rudie's mental anguish, disfigurement, and pain and suffering. *See id*. § 3.001(3) (West 2006); *Licata v. Licata*, 11 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *Slaton v. Slaton*, 987 S.W.2d 180, 183 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). They also sought exemplary damages. Accordingly, the settlement could have included both separate and community property, making the second presumption applicable. *Cottone v. Cottone*, 122 S.W.3d 211, 213 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Licata*, 11 S.W.3d at 273; *Slaton*, 987 S.W.2d at 183.

The appellants also contend that the settlement proceeds remained community property at all times after Rudie and Jessie Mae received the money because Rudie and Jessie Mae did not partition the proceeds. In Hochderffer's motion for summary judgment, he argued the opposite, contending that the Schedule of Property constituted a partition agreement. A partition agreement is used to convert community property to separate property. *See* Tex. Fam. Code Ann. § 4.102 (West 2006). Such an agreement must be in writing and signed by both parties. *See*

2

*id.* § 4.104 (West 2006). It must also contain a specific reference to a partition or other language indicating that such a division was intended. *See Byrnes v. Byrnes*, 19 S.W.3d 556, 559 (Tex. App.—Fort Worth 2000, no pet.).

Here, the Schedule of Property meets the first requirement because it is in writing. It also meets the second requirement because the Trust Agreement, which incorporates the Schedule of Property by reference, was signed by both parties. However, the Schedule of Property does not meet the third requirement because it does not contain any language constituting a valid partition. The Schedule of Property states only that Rudie's contribution to the Trust—the settlement proceeds paid on behalf of him plus ten dollars—was his separate property and that Jessie Mae's contribution to the Trust—the settlement proceeds paid on behalf of her plus ten dollars—was her separate property. Merely stating that the property was separate property is not enough; the agreement must specifically state that the parties meant to partition the property. *See Goetz v. Goetz*, 130 S.W.3d 359, 361 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding that agreement was not partition agreement where agreement used the word "division" but not "partition"); *Byrnes*, 19 S.W.3d at 559 (concluding that agreement was not partition agreement where agreement made no reference to partition of interest); *Collins v. Collins*, 752 S.W.2d 636, 637 (Tex. App.—Fort Worth 1988, writ ref'd) (holding that joint income tax return identifying income from certain assets as separate property was not partition agreement where it did not contain specific language indicating partition). Because the language in the Schedule of Property does not include any reference to a partition, the document is not a valid partition agreement.

Given the absence of a partition agreement and the applicability of the community-property presumptions, I would conclude that the appellants proved their right to summary judgment

3

as a matter of law. As a result, the burden would shift to Hochderffer to present evidence raising a genuine issue of material fact that would preclude summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 358 (Tex. App.—Dallas 2007, pet. denied).

Property is characterized as separate or community at the time of inception of title. *See* Tex. Fam. Code Ann. § 3.404(a) (West Supp. 2009); *Strong v. Garrett*, 224 S.W.2d 471, 474 (Tex. 1949); *Wilkerson v. Wilkerson*, 992 S.W.2d 719, 722 (Tex. App.—Austin 1999, no pet.). The inception of title doctrine fixes the character of certain property interests when a party first acquires a right or claim to the property. *See, e.g.*, *Henry S. Miller Co. v. Evans*, 452 S.W.2d 426, 430 (Tex. 1970); *Pace v. Pace*, 160 S.W.3d 706, 711 (Tex. App.—Dallas 2005, pet. denied); *Wilkerson*, 992 S.W.2d at 722. In order to prove certain assets are separate property, a party must trace and clearly identify the property claimed to be separate. *See McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex. 1973); *Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Zagorski*, 116 S.W.3d at 316; *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex. App.—Austin 2002, pet. denied). Hochderffer has provided no such tracing evidence.

The evidence presented by Hochderffer includes copies of two checks issued from an IOLTA account and deposited into the Trust on behalf of Rudie and Jessie Mae and a copy of the Schedule of Property, in which Rudie and Jessie Mae stated that their contributions to the Trust were their separate property. Neither the checks nor the Schedule of Property have any bearing on the key considerations in proving the separate nature of property: the time and means by which the spouse

4

originally obtained possession of the property. The most the Schedule of Property shows is that Rudie and Jessie Mae *believed* that the amount of the check made out on behalf of Rudie was Rudie's separate property. And the two checks deposited into the Trust show only that each of the checks was deposited on behalf of one of the spouses, not that the checks were meant to compensate for certain types of damages. Without settlement documents, testimony, or some other item of evidence explaining the types of damages for which Rudie and Jessie Mae were compensated in the personal-injury settlement, I would hold that Hochderffer has not raised an issue of fact as to the separate nature of the property. *See, e.g.*, *Licata*, 11 S.W.3d at 274 (settlement agreements specifically pointed out nature of payments as separate property by describing types of damages compensated by settlement).

The majority partially relies on Hochderffer's affidavit testimony in which he stated that he repaid all sums owed to Medicaid and paid all of Rudie's medical expenses for the remainder of Rudie's lifetime from "Rudie Clark's Trust,"[1] leaving no outstanding medical bills at Rudie's death. The majority contends that Rudie's medical expenses were the only community obligation related to the personal-injury damages and that because the medical expenses were paid in full using the trust funds, the trust funds that were deposited with the check made out "on behalf of Rudie Clark" were appropriately characterized as Rudie's separate property. However, the majority's reliance on the payment of Rudie's medical expenses disregards the decisive point on this issue, which is that the character of the property was fixed at the time that Rudie and Jessie Mae took title to it. Evidence showing payments after Rudie and Jessie Mae took title to the funds does not have

---

[1] I presume that Hochderffer's reference to "Rudie Clark's Trust" is a reference to the share of the Clark Family Trust made up of the amount of the check initially deposited into the Clark Family Trust on behalf of Rudie.

5

any bearing on the character of the funds at the inception of title. *See* Tex. Fam. Code Ann. § 3.404(a); *Strong*, 224 S.W.2d at 474; *Wilkerson*, 992 S.W.2d at 722. The only way for Hochderffer to establish the separate nature of the property was to trace and identify the property claimed to be separate and show the time and means by which Rudie originally obtained possession of the property. *McKinley*, 496 S.W.2d at 543; *Zagorski*, 116 S.W.3d at 316; *Ganesan*, 96 S.W.3d at 354. As I previously explained, Hochderffer would have needed to provide settlement documents or some other evidence showing the types of damages for which Rudie and Jessie Mae were compensated in the settlement agreement, which he has not done.

Considering that courts must use the inception of title doctrine in characterizing property, that Hochderffer has not provided any tracing evidence showing that the settlement proceeds received by Rudie were Rudie's separate property, and that the record does not contain any evidence of a partition agreement, I would hold that Hochderffer has not raised a genuine issue of material fact regarding the characterization of the proceeds and that the trial court therefore erred in denying the appellants' motion for summary judgment. I would reverse the portions of the trial court's summary-judgment order partially granting Hochderffer's motion for summary judgment and denying the appellants' summary-judgment motion, and I would render summary judgment in favor of the appellants.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Filed: June 10, 2011