**Affirmed in Part, Reversed and Remanded in Part, and Majority and Concurring and Dissenting Opinions filed April 11, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00324-CV

---

## SUZANNE MARIE THORNHILL, Appellant

## V.

## WILLIAM SCOTT THORNHILL, Appellee

---

**On Appeal from the County Court No. 1
Galveston County, Texas
Trial Court Cause No. 20-FD-0257**

---

## O P I N I O N

Suzanne Marie Thornhill appeals the trial court's final decree of divorce dissolving her marriage to William Scott Thornhill. In two issues, Suzanne contends that the trial court erred in (1) characterizing personal injury settlement proceeds as Scott's separate property, and (2) awarding Suzanne only two years of spousal support in light of her alleged permanent disability. Because the trial court erred in characterizing the settlement proceeds as separate property, we affirm the

final decree in part and reverse and remand in part.

## *Background*

Suzanne and Scott married in September 1998. Scott was the primary breadwinner for the couple, and Suzanne was primarily a homemaker, although she occasionally held part-time jobs outside the home. In September 2006, Scott suffered serious injuries at work that resulted in a lawsuit. Suzanne was a party to the lawsuit and acted as Scott's guardian, as he was determined to be incapacitated at the time. An attorney ad litem was also appointed to protect Scott's interests in the case. A settlement agreement was reached in the lawsuit and signed on March 26, 2009.

In signing the settlement agreement on behalf of herself and Scott, Suzanne agreed to release all claims against the defendants in the lawsuit. In return, the defendants' insurers agreed to make certain cash payments at the time of settlement, as well as monthly payments thereafter for the duration of Scott's life, with a minimum of 30 years of such payments guaranteed. The agreement identified the cash payments as (1) $200,000 to Scott and the law firm representing the Thornhills, and (2) $1 million to Scott, the specific lawyer representing the Thornhills, and Texas Mutual Insurance, which had a worker's compensation lien. The agreement stated that the "cash payments are to be divided by Plaintiffs as follows: $50,000.00 to Suzanne Thornhill, individually[ and] $1,150,000.00 for the benefit of [Scott] Thornhill."

The monthly payments were also stated to be "[f]or the benefit of" Scott and were initially set at $3,125 per month with an annual increase of 2 percent. Under the terms of the agreement, provision for the monthly payments could expressly be made by purchasing an annuity, which is how the payments were secured at the

2

time of the divorce proceedings.

The settlement agreement further provided that "[a]ll sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code and physical injuries or physical sickness within the meaning of Section l30(c) of the Internal Revenue Code." And, it made the Thornhills

> responsible for paying, satisfying and completely resolving from this settlement their attorney's fees, court costs, and case expenses and all hospital, health care, medical, Medicare/Medicaid, and worker's compensation bills, expenses, or liens, if any in a manner so that neither the Defendants nor the Insurers will be responsible for any payment or the reimbursement of same.

The trial court in the tort lawsuit thereafter signed a final judgment approving the settlement agreement.

Suzanne filed a petition for divorce in 2020, and Scott responded with a counterpetition. Prior to trial, the parties reached a general agreement on the division of property, except for the proper characterization and division of the settlement proceeds. Contested issues in the case, including the characterization of the monthly payments from the annuity, were then tried to the bench. The funds from the original cash payments apparently had been exhausted by the time of trial. Suzanne also presented evidence at trial regarding her own medical problems and requested that the trial court award her spousal maintenance for a period of ten years pursuant to Texas Family Code section 8.054, in the event that she was not awarded at least half of the monthly annuity payments.

Among its findings of fact and conclusions of law, the trial court stated that the monthly annuity payments were "funded exclusively by a personal injury award to" Scott. In the final divorce decree, the trial court, among other things,

3

dissolved the marriage between the parties, confirmed the monthly annuity payments were Scott's separate property, and ordered Scott to pay Suzanne spousal maintenance of $1500 per month for two years.

### *Characterization of Settlement Proceeds*

In her first issue, Suzanne contends the trial court erred in characterizing the monthly annuity payments as Scott's separate property rather than community property. Community property is property, other than separate property, acquired by either spouse during the marriage. Tex. Fam. Code § 3.002; *see also* Tex. Const. art. XVI, § 15. In general, all property possessed by either spouse during or on dissolution of the marriage is presumed to be community property. *See* Tex. Fam. Code § 3.003(a). A spouse claiming separate property must prove the separate character of the property by clear and convincing evidence. *See id*. § 3.003(b).

Recovery for personal injuries to the body, including mental pain and anguish and physical disfigurement, sustained by a spouse during marriage is considered that spouse's separate property, but recovery for loss of earning capacity, medical expenses, and other expenses associated with injury to the community estate are community property. *See id*. § 3.001; *Sykes v. Sykes*, No. 14-17-00049-CV, 2018 WL 6836897, at *2 (Tex. App.—Houston [14th Dist.] Dec. 27, 2018, no pet.) (mem. op.) (citing *Licata v. Licata*, 11 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)). Given the community presumption, if a spouse who received a personal injury settlement asserts that some or all of it is that spouse's separate property, it is that spouse's burden to prove by clear and convincing evidence which portion of the settlement is his separate property. *Farmers Tex. Cnty. Mut. Ins. Co. v. Okelberry*, 525 S.W.3d 786, 793–94 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Licata*, 11 S.W.3d at

4

273.

Here, Scott asserted that the settlement proceeds, or at least the portion remaining from the annuity, were entirely his separate property. He therefore had the burden to establish their separate character by clear and convincing evidence. "Clear and convincing" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *E.g.*, *Villalpando v. Villalpando*, 480 S.W.3d 801, 806 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Because this standard is heightened over the usual preponderance of the evidence standard in civil cases, the standard for appellate review is similarly heightened. *See Barras v. Barras*, 396 S.W.3d 154, 171 (Tex. App.—Houston [14th Dist.] 2013, pet. denied)

In a legal sufficiency review of a separate property finding, we examine all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Graves v. Tomlinson*, 329 S.W.3d 128, 139 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 608 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so and disregard all contrary evidence that a reasonable factfinder could have disbelieved. *Stavinoha*, 126 S.W.3d at 608. We are not required, however, to disregard undisputed facts that do not support the finding because that might skew a clear and convincing analysis. *Id.*

We review the trial court's conclusions of law de novo. *Id.* The question is whether the conclusions of law drawn from the facts are correct. *Id.* We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Id.* Because our resolution of the issues in this appeal

largely turns on the proper construction of the settlement agreement, we note that settlement agreements are construed according to the general rules of contract interpretation. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997); *Advanced Pers. Care, LLC v. Churchill*, 437 S.W.3d 41, 44 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Our primary concern in interpreting a contract is to ascertain and give effect to the intent of the parties as expressed in the contract. *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (orig. proceeding) (per curiam). To understand that intent, we examine the entire contract in light of the circumstances present when the contract was entered. *Anglo–Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011). When a contract is unambiguous, its construction is a question of law that we review de novo. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).

Courts considering whether settlement proceeds are separate or community property typically look first to whether the terms of the settlement allocated the proceeds to specific elements of damages that may constitute either separate or community property. For example, the settlement agreement in *Licata* stated that "the nature of the injuries in this case are not easily ascertained, and . . . payment herein is made for physical pain and mental anguish and physical disfigurement alone," and the release therein stated "[t]he sum announced herein is being paid exclusively on the basis of pain, suffering, mental anguish and other intangible damages." 11 S.W.3d at 274. Accordingly, we held that the injured spouse had presented clear and convincing evidence establishing the proceeds were solely her separate property. *See id.*; *see also Sykes v. Sykes*, No. 14-17-00049-CV, 2018 WL 6836897, at *3 (Tex. App.—Houston [14th Dist.] Dec. 27, 2018, no pet.) (mem. op.) (looking first to settlement agreement to determine nature of personal injury damages); *Cottone v. Cottone*, 122 S.W.3d 211, 212 (Tex. App.—Houston [1st

6

Dist.] 2003, no pet.) ("The settlement documents governing the personal injury award did not identify what portion was for lost wages and medical expenses and what portion, if any, was for pain and suffering.").

Here, the settlement agreement provided that the Thornhills were to satisfy certain obligations from out of the total proceeds, and it earmarked $50,000 in cash to Suzanne individually and $1,150,000 in cash plus the monthly payments "for the benefit" of Scott. The settlement agreement did not, however, expressly allocate any particular amounts as being for certain types of damages. The "for the benefit" language indicates certain proceeds were to be used for Scott's benefit, but it does not indicate that those proceeds were intended as separate property. Indeed, the proceeds would be for Scott's benefit whether they were compensation for pain and suffering, lost wages, medical expenses, or something else. Both Scott and Suzanne testified that the money received was used during the marriage to benefit them both. The "for the benefit" language was more likely a reflection that Scott himself was not signing the settlement agreement.

Nonetheless, Scott makes a couple of textual arguments in support of his position that the monthly annuity payments—the only remaining settlement proceeds—are his separate property. First, Scott asserts that the settlement agreement recognized that payment for certain community property obligations, such as attorney's fees, medical expenses, and the worker's compensation lien, were to be fully satisfied from the cash payments and not from the monthly annuity payments. Thus, according to Scott, the monthly annuity payments had to have been for separate property damages elements, such as pain and suffering. This, however, is not clear from the actual language of the settlement agreement, which states only that the attorney's fees, medical expenses, and lien obligation were to be satisfied "from this settlement," a reference that would appear to include both

the cash payments and the monthly annuity payments.

Scott is correct that the final judgment in the tort suit ordered Suzanne, as Scott's guardian, to "pay and satisfy all attorney's fees, expenses, and liens" out of the $1,150,000 cash payment for the benefit of Scott. Regardless, even if we accept that the cash payment was intended to be used to satisfy those community property obligations, it does not follow that the monthly annuity payments are solely and necessarily for separate property elements of damages. For one thing, there is no language in the settlement agreement or the final judgment in the tort suit suggesting that the monthly annuity payments were not, at least in part, compensation for Scott's lost wages, which would, of course, be community property damages. *See, e.g.*, *Cottone*, 122 S.W.3d at 212. As Scott himself testified, he was determined to be incapacitated at the time the settlement agreement was reached and remained so for approximately ten years. At the time of trial in the divorce case, he stated that he was still 60 to 70 percent disabled. There is no indication in the record that the worker's compensation lien covered all of Scott's expected lost wages; in fact, the nature and extent of the lien is scarcely addressed in the record before us.[1]

Second, Scott points to the following language in the settlement agreement that appears to reference the federal income tax consequences of the settlement: "[a]ll sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code and physical injuries or physical sickness within the meaning of Section l30(c) of the Internal Revenue Code." According to Scott, the use of the

---

[1] Scott additionally argues that because Suzanne was involved in negotiating the settlement and signed the settlement agreement, she in effect stipulated that the cash payment would cover all attorney's fees, medical expenses, and worker's compensation liens. Even assuming that was true, however, it would not convert the monthly annuity payments into Scott's separate property.

8

terms "personal physical injuries" and "physical injuries" in the passage reflects that the settlement proceeds were intended to compensate Scott specifically for his physical injuries and not for any element of damages that would constitute community property. We first note that this position cuts against Scott's argument that the Thornhill's were obligated to use the cash payments to satisfy certain community obligations such as medical expenses and liens. But more to the point, the United States Supreme Court has interpreted the "damages . . . on account of" language in 26 U.S.C. section 104(a)(2) as including medical expenses and lost wages awarded in ordinary tort actions, among other things. *O'Gilvie v. United States*, 519 U.S. 79, 83–84 (1996); *Comm'r v. Schleier*, 515 U.S. 323, 329 (1995).[2] Although there appear to be fewer cases discussing the meaning of section 130(c), Scott offers no reason why the "on account of" language therein would not also include these same damages elements. Because the cited language includes these community property damages elements, it does not support Scott's intention that the proceeds were solely his separate property.

Because a proper construction of the settlement agreement does not establish that the monthly annuity payments were Scott's separate property and Scott did not present any other evidence demonstrating that the monthly annuity payments are his separate property, Scott failed to meet his burden of proving by clear and convincing evidence that the monthly annuity payments were his separate property. *See Okelberry*, 525 S.W.3d at 793–94; *Licata*, 11 S.W.3d at 273; *see also In re*

---

[2] The version of section 104(a)(2) addressed in *O'Gilvie* and *Schleier* contained the term "personal injuries," omitting the "physical" modifier contained in the current version of the section. The "physical" modifier was added in 1996 principally to exclude damages for nonphysical injuries such as emotional distress; the interpretation of the "damages . . . on account of" language in *O'Gilvie* and *Schleier* and the analysis set forth in *Schleier* still govern cases under the amended section. *See, e.g.*, *Murphy v. I.R.S.*, 493 F.3d 170, 174–76 (D.C. Cir. 2007); *Rivera v. Baker West, Inc.*, 430 F.3d 1253, 1256–57 (9th Cir. 2005); *Lindsey v. Comm'r*, 422 F.3d 684, 687–88 (8th Cir. 2005).

*Marriage of Franklin*, No. 07-04-0515-CV, 2006 WL 1680875, at *3 (Tex. App.—Amarillo June 19, 2006, pet. denied) (mem. op.) (holding husband failed to establish that annuity received as a result of his personal injuries was not compensation for lost earning capacity during marriage or medical expenses). Accordingly, the trial court erred in characterizing those payments as Scott's separate property, and we sustain Suzanne's first issue.

### *Remaining Issue and Disposition*

A trial court's mischaracterization of property warrants reversal only when it resulted in harm. *See Lynch v. Lynch*, 540 S.W.3d 107, 133 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Harm from mischaracterization typically manifests in the division of the marital estate. *See id*. Here, it was acknowledged at trial that the monthly annuity payments were a substantial asset compared to the remainder of the property the Thornhills owned at the time of divorce. Accordingly, it is clear that the trial court's mischaracterization of the monthly annuity payments affected the just and right division of the marital estate. *See Evans v. Evans*, 14 S.W.3d 343, 346–47 (Tex. App.—Houston [14th Dist.] 2000, no pet.). We must therefore reverse and remand the portions of the trial court's decree that characterized the monthly annuity payments as Scott's separate property and divided the marital estate between the parties on that basis.

In her second issue, Suzanne contends that the trial court erred in only awarding her two years of spousal maintenance instead of indefinite spousal maintenance. Among other possibilities, under Family Code section 8.051, a trial court may order spousal maintenance if the spouse seeking maintenance will lack sufficient property on dissolution of the marriage to provide for the spouse's minimum reasonable needs and the spouse is unable to earn sufficient income to provide for those needs because of an incapacitating physical disability. Tex. Fam.

10

Code § 8.051(2)(A). Section 8.054 governs the duration of spousal maintenance and provides in part that a court awarding maintenance must limit the duration of the order to the shortest reasonable period that allows the spouse seeking maintenance to earn sufficient income to provide for their minimum reasonable needs, unless the ability of the spouse to provide for those needs is substantially or totally diminished because of physical disability. *Id*. § 8.054(a)(2)(A).

We first note here that although Suzanne testified she was permanently disabled, she only requested that the court order Scott to pay spousal maintenance for ten years, not the indefinite duration that she seeks on appeal. We also note that Suzanne did not offer a percentage that she was disabled but did acknowledge she had previously worked, and there was testimony from others that Suzanne had worked before and could likely work in the future, albeit with limitations.

More importantly for our purposes in this appeal, Suzanne's request for spousal maintenance was expressly urged only in the event she did not receive 50 percent of the monthly annuity payments in the division of property. Additionally, under section 8.051, Suzanne would not be entitled to spousal maintenance if she is awarded sufficient property to provide for her minimum reasonable needs. *See id*. § 8.051. Because we are reversing and remanding for a new division of property that includes the monthly annuity payments, we also reverse and remand the trial court's spousal maintenance order for a new determination. Accordingly, we need not address Suzanne's second issue and overrule it as moot.

### *Conclusion*

We reverse the portions of the trial court's final decree that confirmed the monthly annuity payments as Scott's separate property, divided the marital estate, and ordered Scott to pay spousal maintenance, and we remand the case to the trial court for further proceedings limited to a new division of property that includes the

11

monthly annuity payments and a new determination on the request for spousal maintenance. We affirm the remainder of the final decree.

/s/     Frances Bourliot
           Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Spain. (Spain, J., concurring and dissenting)

12