**FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, Appellant**

v.

**Steven Martin OKELBERRY, Individually and as next Friend of next Friend of Nicholas Okelberry and Anthony Okelberry, Minor Children, Appellee**

NO. 14-15-01081-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed May 25, 2017

Manpreet K. Singh, Steven Jon Knight, Kevin D. Jewell, Houston, TX, for Appellant.

Justin A. Smith, John D. Sloan Jr., Houston, TX, for Appellee.

· Panel consists of Justices Boyce, Christopher, and Wise.

## OPINION

Ken Wise, Justice

This is a suit between an insured and his insurance company over the amount due to the insured from his underinsured motorist (UIM) coverage following a settlement in an underlying personal injury lawsuit. Appellant contends that the trial court erred in failing to offset the full amount of the settlement against the insurance company's UIM policy limit. We hold that Farmers was entitled to a credit for the full amount of the settlement and so reverse and remand to the trial court to enter a judgment accordingly.

### FACTUAL BACKGROUND

Appellee Steven Okelberry and his wife, Patricia Okelberry, had a Texas personal auto policy issued by appellant Farmers Texas County Mutual Insurance Company (Farmers). Farmers' policy with the Okelberrys provided $500,000.00 in UIM coverage.

On March 9, 2008, Steven and his two sons were injured in an accident caused by a collision with an 18-wheeler owned by Charles M. Archer and insured by Home State Mutual Insurance Company (Home State). Steven suffered a neck injury requiring surgery and the possibility of additional surgeries in the future.

Home State settled Steven's property-damage claim for $20,066.12 out of the total policy limits of $750,000.00. On February 25, 2010, Steven and his sons sued Archer, his company, and the truck driver for negligence to recover personal injury damages. Patricia, who was not in the car accident, was not a party to the suit.

Farmers gave Steven consent to settle the lawsuit individually and on behalf of his sons on February 1, 2011. The parties settled for $729,993.88, the amount of the remaining Home State liability limit, on November 10, 2011. The judge of the 127th District Court signed a final judgment approving the settlement after a minor settlement hearing the same day. Under the settlement agreement, which was signed by both Steven and Patricia, the parties agreed to the following payments:

1. $269,212.06 payable to Steven's counsel on Steven's behalf;

2. $320,776.71 payable to Steven and Patricia;

3. $50,000.00 payable to Ingenix Subrogation Services on Steven's behalf.

The three checks totaled $639,988.77. The check for $320,776.71 was made payable to Patricia and Steven jointly. The balance of the liability limit was paid to or on behalf of the sons for subrogation claims, annuities, and attorney's fees.

At the minor settlement hearing, the guardian ad litem explained that the parties proposed allocating the settlement amount pro rata based on the amount of past medical expenses incurred for treating Steven and his sons. Steven's pro rata portion of the medical bills was 87.67%. Both Steven and Patricia testified that the pro rata distribution of the settlement money to Steven and his sons was fair. Patricia also signed a release.

Steven, on behalf of himself and his sons, then sued Farmers for UIM benefits. The sons were nonsuited before trial, leaving Steven as the sole plaintiff. At trial, the jury awarded Steven $825,675.84 for past and future physical pain, mental anguish, physical impairment, and medical expenses, as well as past loss of earning capacity. This amount exceeded Farmer's $500,000.00 policy limit.

. Farmer's policy provides that the policy limit can be offset by settlement amounts

paid to the covered insured by the legally responsible parties. Under the policy, Farmers was obligated to pay the lesser of (1) the difference between the amount of Steven's damages and the amount "paid or payable" to Steven for his damages, or (2) the full amount of the $500,000.00 policy limit.

The issue of how to calculate an offset was raised several times during the course of the trial. Ultimately, Farmers rested its case after ensuring that the record included evidence of the settlement and the amounts paid to Steven by the three checks. Steven's counsel also stipulated to the property-damages payment Steven had received.

After the jury verdict, Farmers filed a "Motion to Apply Credits" in which it argued that Farmers was entitled to offset the jury's damage award by the $639,988.77 that was paid to Steven in the settlement, including the full amount of the $320,776.71 check made out jointly to Steven and Patricia. Farmers argued that Patricia was not a party to the underlying suit, never presented a claim for loss of consortium, and any such claim was barred by the statute of limitations; therefore, Patricia could not have released a claim that was not in existence. Farmers also argued that the testimony from the minor settlement hearing demonstrated that the settlement funds were divided among Steven and his sons and no part of the settlement was allocated to Patricia. Farmers attached supporting exhibits consisting of the petition in the underlying case, the transcript of the minor settlement hearing, and the settlement agreement.

In response, Steven filed a "Motion for Judgment" in which he argued that the burden was on Farmers to prove the amount of the offset to which it was entitled with regard to the $320,776.71 payment to Steven and Patricia jointly, and

because it failed to present any evidence of how that amount should be apportioned, Farmers was entitled to no credit with respect to that payment. Steven also argued that the entire $639,988.77 that Steven and Patricia had received in the settlement was presumed to be community property absent clear and convincing evidence to the contrary, and therefore only Steven's one-half interest in those proceeds, or $319,994.38, should be deducted from the jury's verdict. Under either scenario, Steven asserted, he would still be entitled to recover the full $500,000.00 limit under the Farmers policy.

Farmers filed a response to the motion for judgment in which it restated the arguments made in its motion to apply credits and responded to Steven's community property arguments. Among other things, Farmers argued that the jury's verdict awarding categories of damages that were Steven's separate property was clear and convincing evidence that Steven, not Patricia, was the one who sustained injuries in the underlying accident and that the checks issued in the settlement were for the sole benefit of Steven for the injuries he alone sustained. Farmers attached supporting exhibits consisting of the petition in the underlying case, the transcript of the minor settlement hearing, and the settlement agreement.

The trial court held a hearing at which both parties elaborated on their arguments in support of their respective positions. On September 28, 2015, the trial court signed a judgment awarding Steven $500,000.00 in UIM benefits. Farmers moved for a new trial, which was denied after a hearing. This appeal followed.

## ISSUES AND ANALYSIS

On appeal, Farmers raises three issues with multiple sub-issues. Broadly stated, the ultimate issues are whether the trial

court's allocation of the liability settlement proceeds among Steven and his wife is supported by legally or factually sufficient evidence and Texas law, and whether the court correctly calculated the judgment amount.

In its first issue, Farmers contends that the trial court erred in failing to credit Farmers the full amount of the settlement Steven received in the underlying case because (a) no legally sufficient evidence supports the court's apportionment of the liability settlement to any person other than Steven; (b) Farmers did not consent to a liability settlement that purported to compensate Steven's wife, Patricia, for damages she never asserted; (c) the court incorrectly held that Texas's community property presumption applied to the settlement proceeds; (d) any settlement by Patricia was not supported by consideration; and (e) the court's interpretation of the contract terms violates public policy. Because we find Farmers' first issue dispositive, we do not address its remaining two issues.

## A. The Law of UIM Coverage

UIM coverage provides payment to the insured of all amounts that the insured is legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage, not to exceed the limit specified in the insurance policy. Tex. Ins. Code § 1952.106. The total amount is reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle. *Id.* A negligent party is underinsured whenever the available proceeds of his liability insurance are insufficient to compensate for the injured party's actual damages. *Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 380 (Tex. 1989). Courts liberally construe the UIM statutes "to protect persons who are legally entitled to recover damages

from underinsured motorists." *Brainard v. Trinity Univ. Ins. Co.*, 216 S.W.3d 809, 815 (Tex. 2006).

A UIM insurer has no contractual duty to pay benefits until the liability of the other driver and the amount of damages sustained by the insured are determined. *Id.* at 818. Thus, as a prerequisite to recovering UIM benefits, the insured must establish that he had UIM coverage at the time of the accident, the other driver's negligence proximately caused his damages and the amount of his damages, and that the other driver was underinsured. *See In re Reynolds*, 369 S.W.3d 638, 652 (Tex. App.—Tyler 2012, orig. proceeding); *State Farm Mut. Auto. Ins. Co. v. Grayson*, 983 S.W.2d 769, 770 (Tex. App.—San Antonio 1998, no pet.).

## B. The Standards of Review

The trial court determines how to apply a settlement credit to a jury's verdict before rendering judgment. *See Utts v. Short*, 81 S.W.3d 822, 829 (Tex. 2002) (stating that in a tort case involving settling defendants under Chapter 33, "the trial court, not the jury, determines how a settlement credit applies as part of the trial court's function when it determines the judgment to render based on the jury's verdict"); *Melancon v. State Farm Mut. Auto. Ins.*, 343 S.W.3d 567, 570 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (applying Chapter 33 to determination of settlement credits in UIM context).

Steven does not suggest a standard of review this court should apply to the trial court's determination of the amount of settlement credit, but Farmers argues that the appeal turns on the proper interpretation of the policy language as applied to undisputed facts. Accordingly, Farmers contends that our review is de novo in conjunction with contract interpretation principles. *See generally Nassar v. Liberty*

*Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257–58 (Tex. 2017) (courts construe insurance policies using ordinary rules of contract interpretation); *Jankowiak v. Allstate Prop. & Cas. Ins. Co.*, 201 S.W.3d 200, 205–06 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (applying contract construction principles to insurance policy's maximum limit of liability).

■ To the extent the trial court considers evidence in determining the amount of any settlement credit to be applied, we review the trial court's determination for abuse of discretion. *See Sky View at Las Palmas, LLC v. Mendez*, No. 13-15-00019-CV, 2017 WL 219122, at *2 (Tex. App.—Corpus Christi Jan. 19, 2017, pet. denied) (mem. op.); *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 326 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Under an abuse of discretion standard, this court defers to the trial court's factual determinations if they are supported by evidence, but reviews the trial court's legal determination de novo. *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011).

### C. The Parties' Arguments

Farmers argues that the trial court's calculation of the judgment to render based on the jury's verdict depended on how much of the settlement was "paid or payable" to Steven for his damages. Under the UIM coverage in the auto policy be-

tween Farmers and Steven, Farmers agreed to "pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident." The policy also provided that Farmers' $500,000.00 liability limit would be the lesser of:

> a. The difference between the amount of a covered person's damages for bodily injury or property damage and the amount **paid or payable to that covered person for such damages**, by or on behalf of persons or organizations who may be legally responsible; and
>
> b. The applicable limit of liability for this coverage.

(emphasis added). According to Farmers, the evidence is undisputed that three checks totaling $639,988.77 were paid to Steven directly or on his behalf, and therefore Farmers was entitled to an offset of that amount.

Steven responds that the language and purpose of the Texas UIM statute, the case law, and the policy language make clear that the trial court could deduct from the jury's verdict *only* that portion of the underlying settlement that compensated Steven for his own damages—not amounts paid to compensate other claimants for their damages.[1] Steven contends that

---

1. Specifically, Steven argues that liberally construing Insurance Code section 1952.106 to effectuate its purpose, the phrase "the amount ... recoverable from the insurer of the underinsured motor vehicle" cannot include any amounts that are not recoverable by the claimant due to payments to other claimants. *See* Tex. Ins. Code § 1952.106; *Stracener*, 777 S.W.2d at 382; *Am. Gen. Fire & Cas. Co. v. Oestreich*, 617 S.W.2d 833, 834–35 (Tex. Civ. App.—Eastland 1981, no writ) (holding that parents of daughter injured in car accident who sued their UIM insurer on behalf of themselves and daughter were enti-

tled to deduct the $9,750 they obtained in settlement from the negligent driver's liability carrier, after remainder of policy limits was paid to or reserved for payment to passengers in daughter's car, and not the full $10,000.00 policy limits), *disapproved on other grounds*, *Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378 (Tex. 1989). Steven also points to language in Farmers' policy that expressly provides for an offset calculation based on "the difference between the amount of *a covered person's damages* for bodily injury or property damage and the amount paid or payable *to that covered person* for *such* dam-

Farmers acknowledges as much because it does not claim that Steven's judgment should be reduced by the settlement amounts paid to release his sons' claims. Further, Steven maintains, the entirety of the settlement is required to be treated as community property under Texas law, and Farmers, as the party seeking to defeat the community property presumption, had the burden to establish what portion of the settlement funds was separate property and what portion was community property. Because Farmers failed to meet its burdens, Steven argues that the trial court did not err in calculating its judgment. Both sides argue over who had the burden of proof and who met the burden of proof.

We first address Steven's waiver arguments and conclude that Farmers has not waived its arguments concerning the burden of proof. We next conclude that community property law does not apply to the apportionment of the settlement for purposes of determining Farmers' entitlement to an offset for the settlement amounts paid or payable to Steven for his damages. We then conclude that Steven, not Farmers, had the burden to demonstrate what portion, if any, of the unallocated settlement compensated Patricia for her damages, and hold that because Steven failed to offer any evidence of the allocation, Farmers was entitled to offset the entire amount of the settlement. Finally, we explain that even if it was Farmers' burden to demonstrate how much of the settlement compensated Steven for his damages, Farmers conclusively proved that the entire amount of the settlement was paid or payable to Steven for his damages. We therefore reverse and remand with instructions to the trial court to render a judgment awarding Farmers a credit for the entire settlement amount against the

damages Steven sustained in the underlying accident.

### D. Application of the Law to the Facts

#### 1. Farmers did not waive its arguments concerning the burden of proof or the community property presumption.

Farmers argues that once the insurer has satisfied its initial burden to prove its right to a settlement credit by including in the record the settlement credit amount, the burden shifts to the plaintiff to show that certain amounts if any, should not be credited, citing *Utts v. Short*, 81 S.W.3d 822, 829 (Tex. 2002), and *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927–28 (Tex. 1998). Because Steven presented no evidence of what amount, if any, was allocated to Patricia, Farmers contends that Steven has not satisfied his burden and Farmers is entitled to judgment reflecting the full amount of the settlement as a matter of law.

Steven responds that Farmers never argued in the trial court that Steven had the burden to prove any apportionment of settlement proceeds under *Utts* and *Ellender*. Further, Steven asserts, Farmers "acknowledged" that the community property presumption applied when it argued that it had satisfied its burden of proving by clear and convincing evidence what portion of the settlement compensated for Steven's separate damages by virtue of the jury verdict in the UIM case. Steven argues that because Farmers did not make its appellate arguments in the trial court either before judgment or in its motion for new trial and did not challenge the legal or factual sufficiency of the evidence in its motion for new trial, Farmers' appellate arguments are waived and cannot serve as a basis for reversing the judgment. *See* Tex. R. App. P. 33.1(a); *Telesis/Parkwood*

ages." (emphasis added). Farmers does not take issue with the general principle stated.

*Ret. I, Ltd. v. Anderson*, 462 S.W.3d 212, 244 (Tex. App.—El Paso 2015, no pet.) ("An appellate court cannot reverse based on a complaint not raised in the trial court.").

Steven correctly notes that Farmers did not cite *Ellender* and *Utts* to the trial court; however, throughout the case, Farmers argued—consistent with the burden-shifting framework discussed in *Ellender*—that it should be credited for the entire settlement amount. Farmers also argued that it was not Farmers' burden to prove what portion of the settlement may have gone to Patricia.

■ Further, Farmers' response to Steven's community property argument was only one of several arguments Farmers asserted, and there is no indication that Farmers abandoned any of its alternative arguments. *See In re Guidry*, 316 S.W.3d 729, 739 n.11 (Tex. App.—Houston [14th Dist.] 2019, org. proceeding) (noting that parties may make arguments in the alternative). We conclude that Farmers sufficiently articulated its position that the burden was on Steven to show that some part of the settlement was allocated to Patricia to preserve the argument on appeal, and did not waive this argument by arguing in the alternative that, to the extent that Steven's personal-injury settlement may include compensation for community damages, Farmers' evidence demonstrated that no amount of the settlement should be allocated to Patricia. Moreover, Farmers' complaints about sufficiency of the evidence supporting a nonjury issue may be made for the first time on appeal. *See* Tex. R. App. P. 33.1(d); *McElwee v. McElwee*, 911 S.W.2d 182, 187 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

*2. The trial court erred to the extent it credited 50% of the settlement amount to Patricia as community property.*

At the trial court and on appeal, Steven's primary argument is that the checks payable to Steven or to others on his behalf totaling $639,988.77 were presumptively community property and the burden was on Farmers to overcome this presumption by clear and convincing evidence before it could be credited for amounts that were Steven's separate property damages. Because Farmers failed to present clear and convincing evidence rebutting the community presumption, Steven argues, he and Patricia each owned a one-half interest in the settlement funds, or $319,994.38. Subtracting one-half of the settlement amount from Steven's damages results in an amount greater than Farmers' $500,000.00 policy limits, obligating Farmers to pay the full policy limits to Steven as the trial court ordered.

■ Community property is property, other than separate property, acquired by either spouse during their marriage. Tex. Fam. Code § 3.002. In general, all property possessed by either spouse during or on dissolution of the marriage is presumed to be community property. *See* Tex. Fam. Code § 3.003(a). However, a recovery for personal injuries sustained by the spouse during marriage is that spouse's separate property, except any recovery for loss of earning capacity, medical expenses, and lost wages during the marriage. *See id.* § 3.001; *Harrell v. Hochderffer*, 345 S.W.3d 652, 656 (Tex. App.—Austin 2011, no pet.); *Licata v. Licata*, 11 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *Slaton v. Slaton*, 987 S.W.2d 180, 183 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). If the spouse who receives the settlement asserts that some or all of it is that spouse's separate property, "it is that spouse's burden to demonstrate which portion of the settlement is her separate property." *Licata*, 11 S.W.3d at 273; *Slaton*, 987 S.W.2d at 183. The spouse

must prove the separate character of the property by clear and convincing evidence. *See* Tex. Fam. Code § 3.003(b); *Licata*, 11 S.W.3d at 273.

To support an apportion of 50% of Steven's settlement to Patricia, Steven relies on several cases in which it is generally stated that each spouse owns "one-half" of the community property during the marriage. *See In re Worth*, 100 B.R. 834, 840 (Bankr. N.D. Tex. 1989) ("Under Texas community property law, [community] property is considered as owned during the marriage one-half by the husband and one-half by the wife."); *Carnes v. Meador*, 533 S.W.2d 365, 371 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.) ("[E]ach spouse owns a one-half interest in all community funds regardless of which spouse has management and control."). Steven also argues that the community property presumption and burden of proof codified in Family Code section 3.003 is not limited to divorce cases and does not limit the parties who must rebut the presumption to spouses. In support of this argument, Steven cites cases involving disputes among heirs or others over the characterization of property from deceased spouses. *See, e.g.*, *Harrell*, 345 S.W.3d 652, 657–58; *Carnes*, 533 S.W.2d at 368.

█ However, Steven cites no case holding that a community property presumption applies to settlement funds received by non-divorcing spouses in calculating the correct judgment amount in the UIM context. Moreover, courts' references to "one-half" ownership in community property does not mean that the spouses each take 50% of the property as their own. "In general, community property is subject to the "joint management, control and disposition" of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement." Tex. Fam. Code § 3.102(c); *Jean v. Tyson-*

*Jean*, 118 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The community property scheme thus makes the spouses equal owners of undivided interests in all of the community property. *See, e.g.*, *Gen. Ins. Co. v. Casper*, 426 S.W.2d 606, 609 (Tex. Civ. App.—Tyler 1968, writ ref'd n.r.e.) (stating that "[a]n indispensable element" of community property is "the joint ownership of or interest in such property" by the married couple); *Davis v. Davis*, 186 S.W. 775, 777 (Tex. Civ. App.—Texarkana 1916, writ dism'd) (explaining that one spouse "has as much interest in the community property" as the other spouse, and "has an equal right to its beneficial use").

Farmers does not dispute that Steven's settlement is subject to the law of community property *as between the spouses*. Instead, Farmers argues that, although the settlement funds received by Steven may be subject to division upon divorce, this circumstance does not mean the full settlement amount is "unavailable" to Steven during the marriage. Thus, Farmers contends, the trial court erred by determining that only 50% of the settlement was "paid or payable" to Steven as his community property interest in the settlement.

█ We agree with Farmers. All of the checks—including the check made out jointly to Steven and Patricia—were paid or payable to Steven for his damages. Once received, Steven and Patricia's apportionment or use of the money was a matter to be decided between them jointly. Steven cites no authority to support his argument that Farmers, as Steven's UIM insurer, was required to rebut the community property presumption or risk forfeiting 50% of the offset it sought for the settlement amount, and we have found none. Moreover, splitting the amount of the settlement in half defeats the purpose of UIM protection and evades the clear

insurance policy terms that are designed to compensate an insured for his actual damages up to a contractually agreed limit by enabling Steven to reduce the amount of the offset by $319,994.38 based on the false construct that Patricia is entitled to one-half of the settlement. We hold that to the extent the trial court allocated one-half of the settlement amount to Patricia as her community property and offset the jury verdict by $319,994.38 rather than $639,988.77, the trial court erred.

### 3. The settling parties have the burden to prove the settlement agreement's allocation.

Having concluded that the community property presumption does not apply to impose a burden on Farmers to prove the amount of the settlement that is Steven's separate property by clear and convincing evidence, we turn to the parties' dispute about which of them has the burden to prove what amount, if any, of the settlement was allocated to Patricia for her damages, including her unasserted claim for loss of consortium.

Farmers contends that this case is about a UIM carrier's right to credit for a settlement paid by the responsible party's liability carrier in the underlying action and, as such, a burden-sifting framework similar to that described in *Mobil Oil Corp. v. Ellender* applies. *See* 968 S.W.2d 917 (Tex. 1998). In *Ellender*, the court considered whether a tort claimant that settles with one or more defendants or the nonsettling defendant bears the burden to prove the amount of any settlement credit to be applied to the claimant's damages under Chapter 33 of the Texas Civil Practice and Remedies Code. *See id.* at 926–27 (citing Tex. Civ. Prac. & Rem. Code §§ 33.012(b), 33.014). Because the statute was silent on which party had the burden to prove the settlement amount, the court looked to the common law. *Id.* at 927. The court determined that under the common law, a defendant seeking a settlement credit has the initial burden of proving its right to such a credit. *Id.* This burden may be satisfied by placing the settlement agreement or some evidence of the settlement amount in the record. *Id.*

Because a defendant cannot receive credit for settlement amounts representing punitive damages, the *Ellender* court next considered which party was obligated to allocate between actual and punitive damages in the settlement amount. *Id.* The court concluded that once the nonsettling defendant demonstrated a right to a settlement credit, the burden shifted to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation. *Id.* at 928. The court reasoned that "settling plaintiffs are in a better position than nonsettling defendants to insure that the settlement award is allocated between actual and punitive damages." *Id.* If the plaintiff failed to provide an allocation, then the nonsettling party was entitled to a credit equaling the entire settlement amount. *See id.*; *see also Utts v. Short*, 81 S.W.3d 822, 829 (Tex. 2002) ("[T]he trial court shall presume the settlement credit applies unless the nonsettling plaintiff presents evidence to overcome this presumption.").

Farmers contends that the reasoning of *Ellender* supports the placement of the burden on Steven to prove that a portion of the settlement did not benefit him. Farmers argues that it was not a party to the settlement and was not in a position to protect its interest because, among other things, it was not told that part of the settlement would be payable to Patricia, who was not injured and had not filed a loss of consortium claim at the time of the settlement. Farmers asserts that similar to the *Ellender* claimants, Steven was "in the best position to demonstrate why [he] did

not benefit from the settlement." *See El-lender*, 968 S.W.2d at 928. Further, Farmers satisfied its burden by placing in evidence the settlement agreement, the checks made payable to Steven directly or on his behalf, and the transcript from the minor settlement hearing, thus shifting the burden to Steven and Patricia to prove that some amount of the settlement was allocated to Patricia for her damages. Because they failed to present any evidence of an allocation, Farmers argues that it is entitled to an offset of the full amount of the settlement.

Steven disagrees that the burden-shifting framework of *Ellender* applies in the UIM context. Steven argues that the *Ellender* court adopted the burden-shifting procedure in the Chapter 33 context because nonsettling defendants have no power to ensure that settlement agreements between other parties allocate the settlement proceeds and thus "should not be penalized for events over which they have no control." *Id.* at 928. Steven asserts that unlike a nonsettling tortfeasor facing joint and several liability under Chapter 33, Farmers had the opportunity to require that the settlement allocate the proceeds between community and separate property because Farmers had to consent to the settlement. Therefore, Steven asserts, Farmers' argument that it was not a party to the settlement and was not in a position to protect its interests at that time is untrue, because it had the right to require any reasonable information from its insured, and could withhold consent to settle on any reasonable grounds.

■ We are not persuaded by Steven's attempt to distinguish *Ellender*. Although the *Ellender* court applied the burden-shifting framework in the context of Chapter 33, its rulings were grounded on common law. *Id.* at 927. By analogy, certainly the settling parties in a UIM case—in this case a husband and wife—are in the best position to provide a reasonable allocation of their damages between them. *See id.* at 928. And, placing the burden on the plaintiffs prevents them from unfairly denying the insurer the full benefit of the settlement credit it bargained for in its insurance contract with the insured. *See Jankowiak*, 201 S.W.3d at 207 (construing the offset provision in an uninsured motorist policy so as to "prevent an insured from recovering in excess of his or her actual damages" and noting that an insured cannot obtain a "windfall 'double recovery'").

Therefore, we conclude that the trial court erred by placing the burden on Farmers to prove the allocation, if any, of the settlement proceeds paid jointly to Steven and Patricia. Because Steven and Patricia did not allocate their settlement proceeds in the settlement agreement or provide other evidence of their division of the proceeds between them, we hold that Farmers was entitled to offset the full amount of the settlement and the trial court erred by failing to calculate the judgment accordingly. Even if our conclusion is incorrect, however, the evidence conclusively shows that the entire settlement was "paid or payable" to Steven for his damages.

***4. The evidence conclusively shows that Farmers was entitled to an offset of the entire settlement amount paid or payable to Steven.***

■ The evidence in the record includes the settlement agreement and the three checks totaling $639,988.77 paid to or on behalf of Steven in consideration for his settlement and release of claims resulting from the accident. The record also includes other evidence that all settlement funds not distributed to Steven's two sons were specifically intended for Steven's benefit for his damages and that none of the money was allocated to Patricia.

After the accident occurred on March 9, 2008, Steven and his sons filed their petition in the underlying action on February 25, 2010. Patricia was not a party to that suit. Steven's petition alleged negligence and gross negligence against the Archer defendants and prayed for damages benefitting Steven and his sons only. By the time the trial court signed the final judgment approving the settlement on November 10, 2011, the two-year limitations period had expired and Patricia still had not asserted any claim against the Archer defendants.

At the minor settlement hearing, the guardian ad litem, Ms. Davis, explained that the Archer defendants had agreed to settle "the three cases" for Archer's remaining policy limits. Davis explained that Steven was "injured significantly" in the accident, while the sons had suffered "soft tissue damage" only and had healed. After the liability insurer paid Steven's property damage of $20,066.12, there remained $729,993.88 of liability coverage. Davis told the court that the plaintiffs had proposed that the amount be distributed "pro rata based on actual past medical bills for all three of the parties." Steven's pro rata portion was 87.67%. The sons received the remainder.

Both Steven and Patricia testified under oath at the hearing. Steven acknowledged that Archer's liability carrier had offered, and Steven's family had accepted, the policy limit "as a total to settle you and your sons' claim in full and final release of all claims for the defendants in this matter for any damages for this accident." Both Steven and Patricia testified that they believed the settlement was fair and in their sons' best interest. Patricia also asked the court to approve the settlement apportionment as described to the court.

Steven argues that the $320,776.71 check was made out to Steven and Patricia jointly and Patricia signed the settlement agreement and release of claims (including her consortium claim) in consideration for the payment, indicating that some amount of the payment must be hers.[2] But, as discussed above, if some amount of the settlement was intended as consideration for Patricia's release of her damages, Steven and Patricia could have negotiated separate payments to each other to indicate what they determined the value of her claims to be; they did not do so.

Contrary to Steven's argument, the evidence discussed above conclusively shows that the settlement checks were payable to Steven, or jointly to Steven and his wife, or to Steven's attorneys, to compensate Steven for his damages. Steven presented no evidence the $320,776.71 check payable jointly to him and Patricia did not compensate him for his damages. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005) (stating that evidence is conclusive when reasonable people could not differ in their conclusions). And it is undisputed that the other two checks, which were payable to either Steven or his attorneys, likewise compensated him for his damages.

**2.** At the start of the trial, Steven's counsel represented to the court that Patricia signed the settlement agreement because "the third-party lawyer required that some of the money go to Mrs. Okelberry and that the money be split up because he did not want to be sued by her for a loss of consortium claim." Farmers argues that any settlement as to Patricia was invalid because it was not supported by consideration or, alternatively, any consideration received was nominal and not monetary, because the record shows that the tortfeasor's full policy limits were offered to obtain the release of Steven's and his sons' damages and Patricia specifically agreed to that apportionment at the minor settlement hearing. For purposes of this appeal, we assume, without deciding, that the settlement was valid as to Patricia.

To hold as the trial court did would directly contradict the evidence presented at the minor settlement hearing demonstrating that none of the settlement went to Patricia.

The evidence conclusively shows that all of the money was paid to Steven as compensation for his damages, regardless of which party had the burden to prove how much of the settlement was paid or payable to Steven for his damages. Thus, as a matter of law, Farmers was entitled to an offset of $639,988.77 for the entire amount of the payments shown to be "paid or payable" to Steven for his damages.

### Conclusion

We hold that the trial court erred by failing to offset the damages Steven Okelberry was entitled to recover from the underinsured motorist by the amount of the settlement in the underlying case. We reverse the trial court's judgment and remand to the trial court with instructions to render a judgment awarding Farmers Texas County Mutual Insurance Company a credit for the full amount of the settlement of Steven Okelberry's claims in the underlying suit.