**Opinion filed August 24, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00085-CV

_____

## GEORGE FRANCIS SHEEHAN, JR., Appellant

## V.

## PAMELA SHEEHAN, Appellee

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. FM67035**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final decree of divorce.  In two issues, Appellant, George Francis Sheehan, Jr., contends that the trial court erred by characterizing the proceeds from an underinsured-motorist-claim settlement as community property. We affirm.

*Background Facts*

George and Appellee, Pamela Sheehan, married in 1994. The testimony at trial revealed that they had an acrimonious marriage that included separations at various times. On December 15, 2014, George was involved in a motor vehicle accident while in the scope of his employment with West Texas Gas. George and Pamela were separated at the time of the accident, but they reconciled afterwards. They remained together until 2019.

George suffered injuries as a result of the accident that required him to have multiple surgeries. George settled with the driver of the other motor vehicle for her policy limits of $30,000. George's employer provided insurance coverage to him through two policies issued by The Insurance Company of the State of Pennsylvania. One policy provided worker's compensation coverage. The other policy provided underinsured motorist (UIM) coverage.

George settled his UIM claim with The Insurance Company of the State of Pennsylvania after a mediation that occurred in August 2019. The gross amount of the settlement was $1,250,000. After the deduction of attorney's fees and expenses, the net amount payable to George from the settlement was $710,724.25. His attorneys wire-transferred that amount into his and Pamela's joint checking account on October 8, 2019. George and Pamela separated for the final time later that month, and Pamela filed for divorce on November 1, 2019.

George's issues on appeal concern the characterization of the $710,724.25 in net proceeds from the settlement of the UIM claim. In his first issue, George contends that the trial court erred by characterizing the $710,724.25 payment to be community property. George's second issue is related to his first issue—he asserts that the trial court erred by determining that a house that he purchased in Tyler was community property because he purchased it with proceeds from the settlement.

*Analysis*

We review the trial court's characterization of marital property for an abuse of discretion. *See In re Marriage of Skarda*, 345 S.W.3d 665, 671 (Tex. App.—Amarillo 2011, no pet.). A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to guiding principles. *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019). In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review; as a result, legal and factual sufficiency are not independent grounds of reversible error, but instead constitute factors relevant to our assessment of whether the trial court abused its discretion. *Moore v. Moore*, 568 S.W.3d 725, 729 (Tex. App.—Eastland 2019, no pet.).

In his first issue, George asserts that the trial court erred by concluding that the UIM settlement proceeds constituted community property. He does not specify in his brief if his challenge is based on legal sufficiency, factual sufficiency, or both. However, in his motion for new trial, he asserted that he was challenging the legal and factual sufficiency of the evidence supporting the trial court's characterization of the net settlement proceeds.

In conducting a legal sufficiency review under the clear and convincing evidence standard, an appellate court reviews all of the evidence in the light most favorable to the trial court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of the finding if a reasonable factfinder could do so. *See id.* When considering the factual sufficiency of the evidence under the clear and convincing evidence standard, we give due consideration to evidence the factfinder reasonably could have found to be clear and convincing. *See Magness v. Magness*,

241 S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet. denied). We then consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266.

> In its final decree of divorce, the trial court made the following findings:

> > The Court finds the proponent of separate property Respondent George Sheehan, has failed to meet the required burden of proof and accordingly the $710,724 25 net settlement proceeds deposited in to the parties' joint checking account on October 8 2019 is community property[.] Given such finding Respondents claim of separate property for the property he purchased with his portion of the net settlement proceeds fails as well[.]

> > The Court finds that the residence purchased in Tyler, Texas, together with all improvements to same is community and a part of this community estate[.][1]

Ostensibly, George contends that he conclusively established that the settlement proceeds were his separate property.

Community property is property, other than separate property, acquired by either spouse during the marriage. TEX. FAM. CODE ANN. § 3.002 (West 2006); *see also* TEX. CONST. art. XVI, § 15. In general, all property possessed by either spouse during or on dissolution of the marriage is presumed to be community property. *See* FAM. § 3.003(a). A spouse claiming separate property must prove the separate character of the property by clear and convincing evidence. *See id.* § 3.003(b). Thus, George was required to present evidence that would "produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to

---

[1] Rule 299a of the Texas Rules of Civil Procedure provides that "[f]indings of fact shall not be recited in a judgment." TEX. R. CIV. P. 299a. "[A]lthough a trial court errs in including findings of fact in its judgment, findings of fact in a judgment are accorded probative value 'so long as they are not in conflict with findings recited in a separate document.'" *Wood v. Wiggins*, 650 S.W.3d 533, 545 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (quoting *Gonzalez v. Razi*, 338 S.W.3d 167, 175 (Tex. App.—Houston [1st Dist.] 2011, pet. denied)). Here, the parties did not request, and the trial court did not enter, separate findings of fact.

be established." *See Nelson v. Nelson*, 193 S.W.3d 624, 630 (Tex. App.—Eastland 2006, no pet.) (quoting FAM. § 101.007 (West 2019)).

As recently noted by the Fourteenth Court of Appeals:

> Recovery for personal injuries to the body, including mental pain and anguish and physical disfigurement, sustained by a spouse during marriage is considered that spouse's separate property, but recovery for loss of earning capacity, medical expenses, and other expenses associated with injury to the community estate are community property.

*Thornhill v. Thornhill*, 666 S.W.3d 823, 827 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (citing FAM. § 3.001). "Given the community presumption, if a spouse who received a personal injury settlement asserts that some or all of it is that spouse's separate property, it is that spouse's burden to prove by clear and convincing evidence which portion of the settlement is his separate property." *Id.* (citing *Farmers Tex. Cnty. Mut. Ins. Co. v. Okelberry*, 525 S.W.3d 786, 793–94 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Licata v. Licata*, 11 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)).

Here, the evidence concerning the characterization of the settlement proceeds is in two forms: 1) documents concerning the settlement, including two settlement agreements, and 2) oral testimony about the settlement. We initially direct our attention to the oral testimony. George testified that the money from the settlement of the UIM claim was "my money." He further testified that it was deposited into the parties' joint checking account and that he did not instruct Pamela, who paid all of the parties' bills, to not spend the settlement proceeds. When asked, "[t]he money was just put in a big pile to pay bills and do whatever you wanted to do, right?" George replied in the affirmative. George was also asked, "[a]nd isn't it true that talking about that money and when it was deposited, didn't you tell me in here that it was your intent to use that money for retirement as well as -- retirement and taking care of Pam?" to which George also replied in the affirmative.

With respect to the settlement agreements, the construction of a settlement agreement has often been determinative of the characterization of settlement proceeds. *See Thornhill*, 666 S.W.3d at 828–30. "Courts considering whether settlement proceeds are separate or community property typically look first to whether the terms of the settlement allocated the proceeds to specific elements of damages that may constitute either separate or community property." *Id.* at 828.

George executed the first settlement agreement on August 15, 2019, contemporaneous with the mediation of the UIM claim. The first settlement agreement does not allocate the settlement to any specific damage elements. Instead, it generally provided that The Insurance Company of the State of Pennsylvania would pay George the sum of $1,250,000 "in exchange for a complete release of all claims." The first settlement agreement further noted that "[t]he above terms and conditions will be reduced to a formal settlement agreement and either an agreed judgment or a Motion and Order of Dismissal with Prejudice."

The second settlement agreement was not executed until February 1, 2021. Thus, it was executed several months after the execution of the first settlement agreement. It was also executed several months after George received the net settlement proceeds (October 8, 2019) and the date that Pamela filed for divorce (November 1, 2019). Additionally, George executed the second settlement agreement after the parties had withdrawn the settlement proceeds from their joint checking account. In that regard, Pamela withdrew $330,000 from the joint account on October 24, 2019, on the day that the parties separated for the final time. Also, George withdrew a similar amount on that date from the joint account. George later used the money he withdrew to purchase the home in Tyler in February 2020.

The second settlement agreement provides that the consideration in the UIM case is "for personal injury damages consisting of mental anguish." Another provision of the second settlement agreement provided that the $1,250,000 payment

was "for personal injury damages and only personal injury damages," and that "all proceeds constitute compensatory damages on account of personal injuries as contemplated by the applicable provisions of the Internal Revenue Code."

George relies on the second settlement agreement and its provisions that the $1,250,000 settlement was limited to non-economic claims belonging to George. However, the second settlement agreement was executed several months after the net settlement proceeds were paid into the parties' joint account, and after the net settlement proceeds had been withdrawn by the parties. Because George did not execute the second settlement agreement contemporaneous with the receipt of the net settlement proceeds, we conclude that the terms of the second settlement agreement did not affect the characterization of the net settlement proceeds. *See Harrell v. Hochderffer*, 345 S.W.3d 652, 658 (Tex. App.—Austin 2011, no pet.) (noting that documents affecting the characterization of settlement proceeds are executed "sufficiently proximate in time" to the settlement).

The fact that the first settlement agreement contemplated the execution of a later settlement agreement does not change our conclusion with respect to the characterization of the net settlement proceeds as far as George and Pamela are concerned. That provision in the first settlement agreement dealt with the obligations between George and The Insurance Company of the State of Pennsylvania. Because the insurance company also provided worker's compensation coverage to George, the formal (second) settlement agreement understandably took an extended period of time to resolve. But given the fact that several months had passed after the receipt and dissipation of the net settlement proceeds, we are hard-pressed to conclude that an after-the-fact agreement between George and the insurance company altered the characterization of the settlement proceeds as far as his and Pamela's marital property rights were concerned.

Accordingly, we direct our attention to the first settlement agreement because George executed it contemporaneously with the receipt of the settlement proceeds.

As we previously noted, the first settlement agreement did not allocate the settlement to any specific damage elements. Instead, it provided that George would receive $1,250,000 "in exchange for a complete release of all claims." At the time that George executed the first settlement agreement, his live pleading in the UIM case was his third amended petition wherein he asserted claims for "under-insured motorist damages" consisting of "reasonable and necessary medical expenses, physical pain and mental anguish, disfigurement, impairment, loss of earnings, loss of earning capacity" both in the past and in the future. George also asserted a claim for enforcement of an agreement reached in the worker's compensation claim, claims for bad faith and unfair settlement practices, claims for insurance code violations, and claims for violation of the Texas Deceptive Trade Practices Act.

Under the terms of the first settlement agreement, George released all claims in exchange for the settlement proceeds. By doing so, he released a broad range of claims, including community claims for lost earnings and medical expenses. *See Henslee v. Henslee*, No. 12-09-00274-CV, 2010 WL 2982928, at \*4 (Tex. App.— Tyler July 30, 2010, no pet.) (mem. op.). Because the settlement included compensation for both community property claims and separate property claims, it was George's burden to establish by clear and convincing evidence which portion of the settlement proceeds was his separate property. *See Cottone v. Cottone*, 122 S.W.3d 211, 213 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

Here, the trial court did not abuse its discretion by determining that George did not demonstrate by clear and convincing evidence which portions of the settlement proceeds for his UIM claim were his separate property. A proper construction of the settlement agreement does not establish that the settlement proceeds were George's separate property because the first settlement agreement,

which is the operative agreement, is broad in the claims that George released, and it does not allocate the settlement amount to any specific damage elements. Additionally, the oral testimony did not overcome the community property presumption applicable to the settlement proceeds. Accordingly, we overrule George's first issue.

George's second issue, which challenges the characterization of the house he purchased in Tyler with settlement funds, is contingent upon his first issue. Because we have determined that the trial court did not err by concluding that the UIM settlement proceeds were the parties' community property, we overrule George's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


August 24, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.